IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **DEBRA LOUISE WOLFE,** | : | Bankruptcy No. 05-34052 BM |
| | : | |
| | : | |
| | : | Doc. # 36: Trustee's Objection |
| | : | To Claim Of Patricia A. Miller |
| | : | |
| | : | |
| **Debtor** | : | Chapter 7 |

Appearances:   Robert H. Slone, Esquire, Chapter 7 Trustee
Charles O Zebley Jr., Esquire, for Claimant
Dennis J. Spyra, Esquire, for Debtor

## MEMORANDUM OPINION

Debtor Debra Wolfe has filed what she characterizes as an objection to the distribution to pre-petition creditor Patricia Miller the chapter 7 trustee has proposed. Debtor has mischaracterized her objection. She in reality objects to the proof of claim filed by Miller, obviously hoping that the residue of her bankruptcy estate ultimately will be distributed to her instead of to Miller.

The objection will be overruled and the chapter 7 trustee will be authorized to make distribution to Miller in the amount he proposes.

**– I –**

Debtor owned and operated a personal care home in Masontown, Pennsylvania.

On August 22, 2001, debtor entered into an installment agreement of sale pertaining to the personal care facility with Miller and Miller's brother, Michael Trosier ("buyers").

Debtor agreed to sell the business, the real property on which it was situated and all of the fixtures and equipment used in the business for a total of $200,000. Of this amount, $125,000 was allocated to the real property, $50,000 to the good will of the business and $25,000 to the fixtures and equipment (Agreement of Sale, ¶ ¶ 1,6).

The agreement of sale specified that buyers were to pay $20,000 to debtor upon execution of the agreement. They were to pay the remaining $180,000 in 156 equal installments of principal and interest in the amount of $2,049.04 per month (¶ 1).

Buyers agreed to pay all property taxes and assessments as they became due during the term of the agreement. They also agreed to purchase and maintain hazard insurance on the property and liability insurance for the business (¶ 2, 3).

Buyers purchased the premises "as is" and were solely responsible for maintaining, repairing and renovating the premises (¶ 4).

Debtor could declare a default in the event buyers: (1) failed to pay any monthly installment within thirty-one days of its due date; (2) failed to pay property taxes or assessments as they became due; and (3) failed to maintain adequate insurance. In the event buyers defaulted on these obligations, debtor could retain all installment

payments made up to the time of the default as liquidated damages and also demand possession of the premises and surrender of the business (¶ 5).

Upon their compliance with all of the above terms of the agreement pertaining to them, debtor agreed to deliver to buyers a general warranty deed to the premises (¶ 6).

Claimant Miller issued a check payable to debtor in the amount of $20,000 on August 22, 2001. Debtor deposited the check shortly thereafter into a bank account under her control.

Miller claimed at trial that she was unaware when she and her brother executed the sale agreement that the real property was subject to a mortgage debtor previously had granted to Citifinancial Services. The record does not indicate when the mortgage was granted or the outstanding amount of the mortgage lien at the time the sale agreement was executed.

Miller purchased hazard insurance for the building and its contents on November 19, 2001, approximately three months after execution of the sale agreement. The record does not indicate whether she purchased liability insurance for the business.

The property was scheduled for a tax sale in October of 2004 because taxes due for the year 2002 had not been paid. The tax sale did not go forward after debtor paid the past-due taxes out of her own pocket. Citifinancial paid taxes due for the years 2001, 2003, and 2004. Miller attempted to pay property taxes due for the year 2005, but was informed by the taxing authority that Citifinancial already had done so. Why

Citifinancial did not pay the taxes due for the year 2002 when it had done so for the year preceding and the three years following the year 2002 is not apparent from the record.

With two exceptions, Miller paid all monthly installments owed to debtor during the months in which they were due beginning in September of 2001 and ending in June of 2005. Payments due for September of 2002 and November of 2003 were not made during those months. Miller, however, "doubled up" on payments due in October of 2002 and December of 2003 and became current on her payment obligations to debtor.

Miller also did not pay the entire amount due for the months of September and October of 2001, respectively. She instead made payments of only $1,394 and $1,163 for these months. Because debtor had not paid certain assessments against the property that had become due prior to the date on which the agreement was executed, Miller paid the assessments out of her own pocket and set off the amounts against the installment payments that were due for these months.

Miller spent $12,950 to replace two furnaces and thermostats for the personal care facility in April of 2003. She paid the final installment for the furnaces and thermostats in January of 2004.

In June of 2004, debtor ceased making payments to Citifinancial on the outstanding mortgage it had on the property debtor had agreed to convey to Miller and her brother. Unaware of this, Miller continued making monthly payments to debtor, who deposited them into her bank account.

Citifinancial eventually commenced a mortgage foreclosure proceeding against the property in June of 2005. Miller received notice of the action during the same month and, upon the advice of her attorney, made no further installment payments to debtor. The last payment Miller made to debtor occurred on June 20, 2005.

Debtor then filed a voluntary chapter 7 petition on October 3, 2005, thereby staying the foreclosure proceeding Citifinancial had commenced.[1] A chapter 7 trustee was appointed shortly thereafter.

The bankruptcy schedules, which were in total disarray, reported assets with a declared value of only $6,700.00 and liabilities totaling $325,826.75.

Although debtor was still the owner of record of the property, for instance, she did not list it as an asset of her bankruptcy estate. She also did not disclose as assets the existence of the installment sale agreement and the outstanding amount due under it. Citifinancial was identified as having an *un*secured non-priority claim in the amount of $194,764.38. Miller and her brother also were identified as having unsecured non-priority claims in the amount of $0.00 for a "lease on property".

Miller filed a timely proof of claim in the amount of $127,205.84 for breach of contract. Attached to the proof of claim were a copy of the installment sale agreement and an itemization of the components of the claim. She sought to recover the $20,000.00 "down payment" made when the sale agreement was executed, $94,255.84

---

[1] The mortgage foreclosure proceeding was pending when debtor commenced her bankruptcy case, but its precise status at that time is not clear from the record.

in "installments paid" through June of 2005 and $12,950.00 expended in April of 2003 to "replace furnace".

The chapter 7 trustee eventually filed a final report and account along with a proposed order of distribution. According to the chapter 7 trustee, a total of $70,200.03 was available for distribution to creditors. In addition to distributing $8,014.71 to administrative creditors and $507.42 to two unsecured non-priority creditors, the chapter 7 trustee proposed distributing $61,677.90 to Miller.

Debtor did not object to the proposed distributions to administrative creditors and to the other two general unsecured creditors.[2] Debtor did object to the proposed distribution to Miller. Were debtor to prevail here, the proposed distribution to Miller would instead be distributed to her as the residue of her bankruptcy estate in accordance with § 706(a)(6) of the Bankruptcy Code.

The matter has been tried and is ready for decision.

– II –

Although debtor styles her objection as an objection to the chapter 7 trustee's proposed distribution to Miller, she in reality objects to allowance of Miller's claim, upon which the chapter 7 trustee's proposed distribution is based.

The law concerning an objection to a proof of claim is well-settled. The burden of going forward lies with different parties at various stages. The initial burden lies with the claimant, who must allege sufficient facts to establish the *prima facie* validity of the

---

[2.] The chapter 7 trustee was directed to make the other proposed distributions and to hold back the amount he proposed distributing to Miller until debtor's objection was heard and decided.

- 6 -

claim. *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). If the claimant does so, the burden then shifts to the objector to produce evidence which is "equal in force" to the evidence establishing the *prima facie* validity of the claim. The objector must produce evidence which, if believed, would defeat at least one of the essential elements of the claim. 954 F.2d at 173-74. If the objector succeeds in this regard, the burden then shifts to the claimant to prove the validity of the claim by a preponderance of the evidence. 954 F.2d at 174.

While the burden of production may shift, the burden of persuasion does not. It lies with the claimant throughout. 954 F.2d at 174.

Debtor does not contest the *prima facie* validity of Miller's claim. She instead presented evidence at trial which, if believed, would negate Miller's contention that she is entitled to damages because debtor breached the agreement of sale.

Miller maintains that debtor breached the agreement of sale by ceasing in June of 2004 to make payments on Citifinancial's mortgage on the property, as a consequence of which Citifinancial commenced a foreclosure action against the property in June of 2005.

In her objection to Miller's claim, debtor asserts that the claim should be denied in its entirety because it was Miller (and her brother), not debtor, who breached the sale agreement. According to debtor, they breached the sale agreement in three respects. The primary thrust of debtor's objection is that claimant (and her brother) breached the sale agreement when they stopped making installment payments to debtor starting in

July of 2005. Debtor further asserts that they breached the sale agreement by failing to purchase insurance for the property and the business and by failing to pay property taxes that were due for the year 2002.[3]

The primary objective when interpreting a contract is to ascertain and give effect to the intent of the parties. *Murphy v. Duquesne University*, 565 Pa. 571, 590-91, 777 A.2d 418, 429 (2001). In the case of a written contract, their intent is embodied in the writing itself. *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Co.*, 588 Pa. 470, 480, 905 A.2d 462, 468 (2006). When the language of the contract is clear and unambiguous, its meaning must be determined solely from the content of the contract itself. *Crawford Central School District v. Commonwealth of Pennsylvania*, 585 Pa. 131, 143, 888 A.2d 616, 623 (2005).

This does not, however, mean that a court construing a written contract is limited in every instance to considering only terms that are expressly set forth in the written instrument. Substantive laws in effect at the time and place a contract is entered into are incorporated into the contract as though they were expressly included therein. *DePaul v. Kauffman*, 441 Pa. 386, 398, 272 A.2d 500, 506 (1971).

The doctrine of necessary implication is an example of such law. In the absence of an express provision to that effect in a contract, the doctrine implies that the contracting parties have agreed to do and perform whatever is necessary to accomplish the purpose of the contract and will refrain from doing anything that is injurious to the

---

[3.] Debtor appears to rely on paragraph 5 of the sale agreement, which provided that if the buyers defaulted she could retain as liquidated damages all installment payments made up to the time of the default.

other party's right "to receive the fruits of the contract". *Glasmere Fuel Service, Inc. v. Clear*, 900 A.2d 3987, 402-03 (Pa. Super. 2006).

A term is implied only if it is manifestly clear that the contracting parties contemplated but did not expressly include it in the written agreement or, alternatively, if it is necessary for the law to imply the term to give effect to the intention of the parties. *Slater v. Pearle Vision Center, Inc.*, 376 Pa. Super. 580, 587, 546 A.2d 676, 680 (1988).

The doctrine of necessary implication applies only in limited circumstances. Implied terms, for instance, cannot trump express contractual terms. *Conomos, Inc. v. Sun Oil Co., Inc. (R&M)*, 831 A.2d 696, 706 (Pa. Super. 2003).

To successfully maintain an action for breach of contract, one must establish: (1) the existence of a contract and its essential terms; (2) breach of a duty imposed by the contract; and (3) resulting damages. *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006).

It not disputed that a contract existed between debtor and buyer wherein debtor agreed to sell her personal care home to buyers and buyers agreed to pay the sum of $200,000 as consideration. The express terms of the written contract were outlined previously.

The express terms of the sale agreement were not the only terms. There was another term that was not expressly stated. Of particular significance in this regard is

paragraph 6 of the agreement. It provided that debtor would debtor deliver a warranty deed to the property to buyers once they had paid the purchase price in full.

Implicit in paragraph 6 was an agreement by the parties that debtor would pay off the mortgage lien of Citifinancial by the time buyers had paid debtor in full. This obligation on debtor's part was necessary to effectuate the sale agreement. Without it, the agreement would make no sense.

It is the law in Pennsylvania that a party to a bilateral contract, which we have here, breaches a contract when she fails to do something she expressly or impliedly agreed to do. *Johnson v. Finestra, Inc. (Construction Division),* 305 F.2d 179, 181 (3d Cir. 1965). If the breach amounts to a material failure of performance, the other party is discharged from any liability under the contract. *Borough of Greentree v. Tortorette*, 205 Pa. Super. 532, 533, 211 A.2d 76, 77 (1965).

Debtor's obligation to pay off the mortgage lien of Citifinancial was a critical term of the sale agreement. Her decision to discontinue making payments to Citifinancial starting in June of 2004 was a material breach of the sale agreement.

Even though they did not discontinue making monthly installments to debtor until June of 2005, buyers were discharged from any liability on the contract as of June of 2004. Had they known in June of 2004 that debtor had stopped making payments to Citifinancial, they undoubtedly would have stopped making installments payments to debtor at that time.

Debtor has no basis under the law to complain, as she does here, about buyers' decision to stop making payments to her when they did. A party to a contract will not be heard to accuse the other party of breaching the contract when the other party's actions are the result of the former' party's breach of the agreement. *Archer v. State Farm Insurance Co.*, 419 Pa. Super. 558, 569, 615 A.2d 779, 785 (1992).

The conclusion that it was debtor who breached the sale agreement by discontinuing payments to Citifinancial in June of 2004 depends on the proposition that buyers had not materially breached the sale agreement first. If they had, the outcome of this matter well might be different.

In addition to requiring buyers to continue making installment payments to debtor until the purchase price was paid in full, paragraph 2 of the sale agreement obligated them to pay all property taxes as they became due. Paragraph (3) obligated them to purchase casualty insurance for the property and to purchase liability insurance in connection with the operation of the personal care home.

Debtor asserts that her obligation to pay off the mortgage of Citifinancial was discharged long before June of 2004 because buyers had failed to purchase required insurance and had failed to pay property taxes due for the year 2002. The assertion that buyers materially breached the sale agreement by failing to do these things lacks any merit.

Debtor asserted at trial that Miller did not purchase casualty insurance for the property immediately after executing the sale agreement in August of 2001. Evidence

produced at trial establishes the Miller did not purchase such insurance until some three months later, in November of 2001. Debtor did not say anything at trial about whether Miller purchased liability insurance. The record does not indicate whether Miller purchased such insurance.

For some unexplained reason, neither Citifinancial nor claimant paid property taxes due for the year 2002. Debtor paid the taxes out of her own pocket in the year 2004 to avoid a tax sale of the property. Why Citifinancial did not pay the taxes from an escrow account, which almost surely existed, is a mystery. The record indicates that it paid the taxes that were due for the years 2000 2003, 2004 and 2005. No information was provided at trial concerning who paid the taxes for the year 2001.

The precise amount debtor paid out of her own pocket for taxes due for the year 2002 is not clear. If surroundings years provide any indication, we estimate that debtor paid approximately $1,000, give or take a hundred dollars or so.

Strictly speaking, it might be said that buyers breached the sale agreement when they failed to perform their contractual obligations. When performance of an obligation arising under a contract is due, any failure on the part of the party charged with that obligation amounts to a breach. *Widmer Engineering, Inc. v. Dufalla*, 827 A.2d 459, 467 (Pa. Super. 2003).

It does not, however, follow from the above that debtor was discharged from her obligation to continue making mortgage payments to Citifinancial. If a party to a contract fails to perform its obligations and its breach amounts to an *im*material failure,

that party still may recover in an action on the contract. *Borough of Greentree*, 205 Pa. Super. at 533. Perfect performance, in other words, is not required in an imperfect world.

The doctrine of substantial performance was devised as an "instrument of justice". Its purpose is to avoid forfeiture on account of a technical, inadvertent or *unimportant* failure to perform. It is designed to protect and provide relief for one who has faithfully and honestly endeavored to perform the contract in all material and substantial particulars. *Atlantic LB, Inc. v. Vrbicek*, 905 A.2d 552, 558 (Pa. Super. 2006).

Substantial performance is an equitable doctrine. Equity abhors forfeiture, which should not be undertaken lightly. *Williams v. Vesley*, 290 Pa. Super. 192, 196, 434 A.2d 196, 198 (1981).

There is no bright-line test for determining if a failure to perform is material or immaterial. Whether a breach is "substantial enough" to justify the other contracting party to consider the entire transaction "at an end" is a matter of degree. It must be determined "by weighing the consequences in the custom of men in the performance of contracts similar to the one that is involved in the specific case". *Widmer Engineering*, 827 A.2d at 468 (quoting *Gray v. Gray* 448 Pa. Super. 456, 468, 671 A.2d 1166, 1172 (1996)).

The following considerations, among others, may be probative for determining materiality in specific instances: (1) the extent to which the other party will be deprived of the benefit she reasonably expected; (2) the extent to which the party that has

failed to perform will suffer forfeiture; and (3) the extent to which the party that did not perform comported with standards of good faith and fair dealing. *Widmer Engineering*, 827 A.2d at 468.

We conclude after considering these factors in this instance that buyers substantially performed their contractual obligations and that debtor was *not* relieved of her obligation to pay off the mortgage lien of Citifinancial.

The extent to which debtor was deprived of the benefit she reasonably expected to receive on account of Miller's failure to immediately purchase casualty insurance for the property and to pay taxes due for the year 2002 was minimal and inconsequential.

Miller waited three months after executing the sale before she purchased insurance for the property. The obvious purpose of the requirement that she purchase such insurance was to protect debtor in the event the building, say, burned to the ground. No damage to the property occurred during that three-month period, however. Debtor, in other words, was not injured by Miller's tardiness in purchasing insurance.

As for Miller's failure to pay property taxes that were due in the year 2002 which debtor ultimately paid out of her pocket to avoid a tax sale of the property, the injury debtor suffered as a consequence was nominal at best. She was not, in other words, deprived of the benefit she reasonably expected to receive when she sold the property. We previously estimated that debtor paid approximately $1,000 out of her own pocket to pay the taxes. The purchase price for the property, the business and furniture and fixtures, however, was $200,000. The amount debtor paid out of her own pocket for

taxes due for the year 2002 amounts to 0.005, or one-half of one percent, of the purchase price.

The conclusion is vastly different when we consider the extent to which buyers would be injured if they suffered forfeiture because they failed to perform their contract obligations. Buyers paid debtor $20,000 when they executed the installment sale agreement and an additional $94,255.84 ($2,049.04 x 46 = $94,255.84) before they stopped making further monthly payments to debtor beginning in July of 2005. By then they had paid debtor a total of $114,255.84 ($20,000.00 + $94,255.84 = $114,255.84). It would be highly inequitable if debtors were required to forfeit this amount because they were three months late in insuring the property and had not paid property taxes due for the year 2002.[4]

Finally, we are satisfied after reviewing the history of buyers' performance that they acted in good faith and that they dealt fairly with debtor. Buyers were current on virtually all, if not all, of their other contract obligations when they learned that Citifinancial had commenced a mortgage foreclosure action because debtor had defaulted on the mortgage held by Citifinancial. It was only after buyers learned of the foreclosure action that, upon the advice of an attorney, they stopped making monthly installment payments to debtor.

---

[4.] Debtor was not completely without a remedy with respect to the taxes she paid. For instance, she could have "tacked on" the amount she spent and demanded that buyers reimburse her for this expenditure before she conveyed the property to them. She instead stopped making payments to Citifinancial before buyers had paid the full purchase price.

In addition to the above payments totaling $114,255.84, Miller seeks in her proof of claim to recover $12,950 she spent in April of 2003 to replace two furnaces and thermostats in the personal care facility. Debtor has said nothing about this portion of the proof of claim, perhaps because she thought her assertion that it was buyers who breached the sale agreement would carry the day.

Nothing in the sale agreement entitles Miller to recover this expenditure. In spite of this, we conclude that this portion of the proof of claim should be allowed as a quasi-contract.

A quasi-contract, also known as a contract arising by operation of law, differs from a true contract. Unlike a true contract or a contract implied in fact, a quasi-contract is not based on a promise by one to undertake some performance. It is not based on the intention of the parties, but arises instead by operation law "for reasons of justice". *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 449 (1969). A quasi--contract may be found in the absence of any expression of assent by the party to be charged and may even be found in spite of that party's contrary intention. *Schott*, 436 Pa. at 290, 259 A.2d at 449.

The doctrine of quasi-contract comes into play when it would be inequitable for a party to retain a benefit conferred by another without a corresponding exchange of value. *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. 2004).

Denial of the portion of Miller's proof of claim pertaining to the furnaces and thermostats would be unjust and inequitable in light of debtor's failure after May of

2004 to make continue making mortgage payments to Citifinancial. Justice and equity require allowance of this portion of Miller's proof of claim.

To summarize, we conclude in light of the foregoing that Miller's proof of claim in the amount of $127,265.84 should be allowed in its entirety ($20,000.00 + $94,255.84 + $12,950.00 = $127,205.84). Debtor's objection to the chapter 7 trustee's proposed distribution to Miller will be overruled. The chapter 7 trustee will be directed to make final distribution to claimant in the amount he proposes.

An order shall issue.

                                                                                           **/s/**
                                                   **BERNARD MARKOVITZ**
                                                     U.S. Bankruptcy Judge

Dated: November 6, 2007

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | | |
| **DEBRA LOUISE WOLFE,** | : | Bankruptcy No. 05-34052 BM |
| | : | |
| | : | |
| | : | Doc. # 36: Trustee's Objection |
| | : | To Claim Of Patricia A. Miller |
| | : | |
| | : | |
| **Debtor** | : | Chapter 7 |

## ORDER OF COURT

**AND NOW**, this **6th** day of **November**, 2007, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** that debtor's objection to the chapter 7 trustee's proposed final distribution to claimant Patricia Miller be and hereby is **OVERRULED**. Claimant's proof of claim **SHALL** be and hereby is **ALLOWED** in its entirety. The chapter 7 trustee **SHALL** make final distribution to claimant Patricia Miller in the amount he proposes.

It is **SO ORDERED**.

/s/
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm: Debtor
Dennis J. Spyra, Esquire
Robert H. Slone, Esquire
Charles O. Zebley Jr., Esquire
Office of United States Trustee